UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WILLIAM KOPPE,<br><br>　　　　　　Petitioner,<br><br>　vs.<br><br>R. DAVIS,<br><br>　　　　　　Respondent. | No. 2:16-cv-1296-JAM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Petitioner challenges a judgment of conviction entered against him on February 20, 2013 in the Sacramento County Superior Court on charges of second degree murder with a deadly weapon. He seeks federal habeas relief on the following grounds: (1) his trial counsel was ineffective in failing to advise him of certain affirmative defenses prior to entry of his plea deal and (2) his appellate counsel was deficient in failing to raise his ineffective assistance of trial counsel claim on appeal. Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

/////

/////

1

## I. Background

In an unpublished memorandum and opinion affirming petitioner's judgment of conviction on direct appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Police found defendant at the scene of Keenan Slotty's murder covered in blood and practically confessing to the killing. In one version of the murder, according to defendant's son and codefendant Nicholas Koppe, Nicholas started the fight with the victim and his father took over. Both were charged with first degree murder with an enhancement for using a deadly and dangerous weapon (a knife). If convicted as charged, defendant would have faced a prison term of 25 years-plus to life in prison. Nicholas, with two prior strikes, would have faced a sentence of 25 years-plus to life for any felony conviction.
>
> The People were reluctant to compromise, but before the trial started they offered defendant and Nicholas a package they both had to accept. Defendant was to plead no contest to second degree murder and admit the use of a knife. He would be sentenced to a 15–year indeterminate term for the second degree murder and a one-year determinate sentence for the use of a knife, for a total of 16 years to life. Nicholas would plead no contest to one count of voluntary manslaughter, use of a knife, and assault by means of a knife, and would admit two prior convictions. He would receive a 33–year determinate sentence.
>
> At the plea hearing, Nicholas vacillated between his options. After initially agreeing to the deal, he backed out of it. He agreed to it again after telling defendant he would do what defendant wanted, and defendant indicated he should accept the deal. At one point, Nicholas discussed the deal with his attorney and said, "Just because I can't get up to represent myself doesn't mean he should go down for the rest of his life." He backed out of the deal for a second time, but finally accepted it after the court ordered the witnesses out of the courtroom and the trial to proceed.
>
> The trial court explicitly asked defendant several questions about his rights including: if he understood and waived them, if he understood the consequences of his decision, and if he had any questions regarding his plea. He answered the questions appropriately and both he and Nicholas pled no contest to the previously mentioned charges.
>
> Defendant filed a motion to withdraw his plea. When denying the motion, the court found defendant had made a very rational and voluntary decision because the court believed, relying on its experience with homicide cases, the People had a very strong case and a jury was likely to find defendant guilty. The trial court did not find extraneous factors, such as might be present in a package deal, that affected the outcome of the case or the

> decision of defendant to such a degree that it overpowered his independent will. Defendant appeals.

*People v. Koppe*, 2014 WL 2591117, at *1 (Cal.App. 3 Dist., 2014). Petitioner only raised one issue on direct appeal, however, namely whether the trial court abused its discretion in denying his motion to withdraw his plea. *Id.* at *1-2. The court of appeal denied his direct appeal – *Id.* at *4 - and the California Supreme Court declined to review this claim on August 20, 2014. Lodged Document Six "Order Denying Petition for Review."

The two claims relevant to the immediate action were raised for the first time in a habeas petition filed with Sacramento County Superior Court on August 21, 2015. Lodged Document Seven "Petition for Writ of Habeas Corpus." The superior court issued an order denying that petition on October 26, 2015. Lodged Document Eight "Order Denying Petition – Sacramento County Superior Court." Petitioner appealed that order and, on December 3, 2015, the California Court of Appeal for the Third Appellate District issued a summary denial. Lodged Document Ten "Order Denying Petition – Court of Appeal for the Third Appellate District." The California Supreme Court likewise issued a summary denial on March 16, 2016. Lodged Document Twelve "Docket Reporting Denying Petition-California Supreme Court."

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

3

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34, (2011)); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v.*

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

4

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption

may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

/////

**III. Petitioner's Claims**

    **A.    Ineffective Assistance of Trial Counsel**

Petitioner argues that trial counsel was ineffective in failing to research and apprise him of available affirmative defenses prior to entry of his plea agreement. ECF No. 1 at 4-5.[2] His petition states that "there were numerous defenses available", but only explicitly references "necessity, duress, and/or wrongful self-defense" and, as such, only these will be considered. He claims this defective performance of counsel resulted in a guilty plea that was neither knowing nor intelligent. *Id*. In light of the summary denials issued by the California Supreme Court and the Third District Court of Appeal, this court looks to the superior court's October 26, 2015 order as the last reasoned decision. *See Ylst*, 501 U.S. at 803. In that decision, the superior court held, in relevant part:

> In evaluating a claim of ineffective assistance of counsel, the court applies a two-part test:
>
> "[A] defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.'" (*In re Harris* (1993) 5 Cal. 4th 813, 832-833, citing *Strickland v. Washington* (1984) 466 U.S. 668 and *People v. Pope* (1979) 23 Cal. 3d 412; *see also In re Scott* (2003) 29 Cal. 4th 783, 811-812.)
>
> In applying the first part of the test, courts are directed to be highly deferential. A petitioner claiming ineffective assistance must overcome a presumption that, considering all of the circumstances, counsel's actions "might be considered sound trial strategy." (*Strickland*, *supra*, 466 U.S. at p. 689.)
>
> In the second part of the test, a petitioner "must also show prejudice flowing from counsel's performance or lack thereof. [cites omitted] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [cites omitted]" (*Ibid*.)
>
> The *Strickland* standard has been applied to plea bargains. (*See Hill v. Lockhart* (1985) 474 U.S. 53.) In describing the "prejudice" analysis, the

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

Hill court said: "The . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Hill*, *supra*, 474 U.S. at p. 59.)

*Hill* further suggests that the test is not subjective. A petitioner must state facts indicating his choice of going to trial would have been reasonable under the circumstances.

Petitioner has failed to show prejudice.

As to petitioner's claim regarding lifetime parole, the transcript of the change of plea, which occurred on February 20, 2013, shows the following: The court describes the consequences of the plea, including the sentence of 16 years to life. Then the court states:

"If and when you do parole, the parole period would be for life. If you were to violate your parole, you could be returned to prison for life.

Do you understand those consequences, sir?"

Petitioner answered: "Yes."

The obligation to inform petitioner of the consequences of the plea was fulfilled by the court prior to entry of the plea. As for sentencing itself, the parole period is set by statute; there is no need for the court to impose it. Neither trial nor appellate counsel had reason to revisit the question of lifetime parole.

Finally, petitioner contends that his trial counsel was ineffective for failing to investigate and to discuss with him the potential defenses that he might have, particularly imperfect defense of another or duress. Petitioner does not say what sort of investigation counsel might have conducted. The facts that would support or fail to support either of these arguments appear to be included in the statements that petitioner and his son made to police.

At best, that evidence would show that petitioner saw the victim and his son in a fight with the victim on top of his son. The evidence would also show that after being stabbed by petitioner's son, either the victim got off of petitioner's son or petitioner pulled the victim off of his son. In either case, petitioner's son was no longer in imminent danger when petitioner began stabbing the victim. In fact, petitioner's son left the scene. Even if petitioner initially thought that his son was being attacked, this perception would not justify his continuing the attack after his son had left. In addition, petitioner told police that he "did it" and that he was "proud of it." These facts do not show that a voluntary manslaughter conviction on

8

> the theory of imperfect defense of another was likely. Nor would they support a defense of duress.
>
> Petitioner received a significant benefit from the bargain in that his sentence was shorter than the sentence he might otherwise have received had he gone to trial. His chances of proving a defense were not great. Counsel was not ineffective for proceeding with the plea agreement in petitioner's case.

Lodged Document Eight "Order Denying Petition – Sacramento County Superior Court" at 2-3. As noted *supra*, petitioner appealed this decision to both the court of appeals and California Supreme Court; both issued summary denials. Lodged Document Ten "Order Denying Petition – Court of Appeal for the Third Appellate District"; Lodged Document Twelve "Docket Reporting Denying Petition-California Supreme Court."

### 1. **Applicable Legal Standards**

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id*. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id*. at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. In the context of guilty pleas, a petitioner may demonstrate prejudice by establishing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Where, as here, "the alleged error of counsel is a failure to advise the defendant of a

9

potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* at 59.

The Supreme Court has held that strict adherence to the *Strickland* standard is "essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011). This is because "[t]he art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision." *Id*. Additionally, "[t]he prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates . . . could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one." *Id*.

### 2. **Analysis**

The superior court reasonably determined that the facts of the case did not support a defense of duress or imperfect defense of another. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable --a substantially higher threshold.") (internal quotations and citations omitted). Police statement evidence indicated that petitioner's son was not in danger at the time he began stabbing the victim insofar as it provided "either the victim voluntarily got off [petitioner's son] or [petitioner] pulled him off. And then his father said something to the effect of, I'll take care of this." Clerk's Transcript on Appeal at 84. The statement evidence also indicated that petitioner's son was no longer at the scene at the time of the killing. *Id*. at 68-69. After being taken into custody, petitioner purportedly told the officers that the victim "got what was coming to him" because of his alleged propensity to physically abuse his girlfriend. *Id*. at 35. As respondent points out, the details of the killing would also have cast serious doubt on the notion that the stabbing was undertaken to secure the safety of petitioner's son. The autopsy report revealed that the victim had been stabbed in excess of forty times – twenty-two of which were to the head and neck area. *Id*. at 137, 207. Finally, the evidence that petitioner spontaneously told police, in reference to the

killing, that he "did it" and was "proud of it" made success on either defense even less likely. *Id*. at 34-36.

Though the superior court made no reference to the defense of necessity, the aforementioned evidence indicates that this defense would have also have been unlikely to succeed at trial. Under California law, the defense of necessity "involves a determination that the harm or evil sought to be avoided by [the illegal conduct] is greater than that sought to be prevented by the law defining the offense charged." *People v. Heath*, 207 Cal. App. 3d 892, 901 (1989). "The situation presented to the defendant must be of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action." *Id*. Unlike duress, which is undertaken in reference to an immediate, present danger, necessity contemplates a danger in the immediate future and the defense "contemplates the defendant having time to balance alternative courses of conduct." *Id*. at 900-901. Petitioner has failed to present any evidence of a specific, forthcoming danger which could be invoked to justify stabbing the victim repeatedly.

In light of the strong evidence indicating that the killing was not undertaken in defense of petitioner's son, under duress, or out of necessity, this court cannot conclude that trial counsel's failure to apprise petitioner of these affirmative defenses prejudiced him in any way. The likelihood that these defenses would have succeeded at trial was negligible and the superior court's determination to that effect was reasonable. Given that petitioner has failed to carry his burden of demonstrating that he was prejudiced by trial counsel's failure to apprise him of these defenses, the court need not determine whether counsel's performance in this respect was actually deficient. *See Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir. 1998) ("We need not evaluate both prongs of the *Strickland* test if the defendant fails to establish one.").

### B. Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in failing to raise a claim for ineffective assistance of trial counsel on direct appeal. ECF No. 1 at 4. The superior court did not explicitly reference this claim in its October 26, 2015 order. As such, the court must determine what arguments or theories could have supported the state court's rejection of this claim. *See Richter*, 562 U.S. at 102. ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]."). The same *Strickland* standard articulated *supra* controls here.

The court has already determined that petitioner was not prejudiced by his trial counsel's failure to apprise him of any affirmative defenses. His petition does not raise any alternate grounds on which his trial counsel's performance might be deemed deficient. Accordingly, his appellate counsel cannot be faulted for failing to raise this claim on direct appeal. *See Penson v. Ohio,* 488 U.S. 75, 91 (1988) ("[i]t is the obligation of any lawyer—whether privately retained or publicly appointed—not to clog the courts with frivolous motions or appeals.") (internal quotations omitted) (quoting *Polk County v. Dodson*, 454 U.S. 312, 323, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996) ("[T]he failure to take a futile action can never be deficient performance."). This claim should be denied.

### C. Lifetime Parole Supervision

Petitioner only raised two explicit claims in his petition, namely the two discussed above. In his exhibits, however, he has included a letter to his trial counsel which asks why he was not informed that his plea also entailed lifetime parole supervision. ECF No. 1 at 16. In that letter, he states that, had he been aware of this provision, he would have gone to trial. *Id*. It is unclear if petitioner intended to raise this as a claim. Out of an abundance of caution, the court will address it as such. The superior court considered it and held:

> As to petitioner's claim regarding lifetime parole, the transcript of the change of plea, which occurred on February 20, 2013, shows the following: The court describes the consequences of the plea, including the sentence of 16 years to life. Then the court states:
>
> "If and when you do parole, the parole period would be for life. If you were to violate your parole, you could be returned to prison for life.
>
> Do you understand those consequences, sir?"
>
> Petitioner answered: "Yes."

12

> The obligation to inform petitioner of the consequences of the plea was fulfilled by the court prior to entry of the plea. As for sentencing itself, the parole period is set by statute; there is no need for the court to impose it. Neither trial nor appellate counsel had reason to revisit the question of lifetime parole.

Lodged Document Eight "Order Denying Petition – Sacramento County Superior Court" at 3-4.

This exchange is clearly represented in the record. In relevant part:

> THE COURT: Mr. Koppe, the consequences of your plea would be that you would be sentenced to state prison for the term of 16 years to life, but 15 years would be an indeterminate term, 15 to life, for the second-degree murder.
>
> There would be a determinate term of one year for the knife. How it actually works is that you would serve the determinate term first and then your indeterminate term would start to run. You would not be eligible for parole until you served the sixteen years.
>
> **If and when you do parole, the parole period would be for life. If you were to violate your parole, you could be returned to prison for life.**
>
> **Do you understand those consequences, sir?**
>
> **DEFENDANT C. KOPPE: Yes.**

"Reporter's Transcript on Appeal, Vol. 1" at 51-52 (emphasis added). Accordingly, petitioner cannot convincingly claim that he was unaware of this provision prior to the entry of his plea and this claim, to the extent he seeks to raise it, should be denied.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file

objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 20, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE